Rita Jane LYNCH and Helen Hill, Appellees,

v.

The CITY OF OKLAHOMA CITY, a Municipal Corporation, Appellant.

No. 52836.

Court of Appeals of Oklahoma, Division No. 2.

March 3, 1981.

Rehearing Denied March 27, 1981.

Certiorari Denied May 11, 1981.

As Corrected May 20, 1981.

Released for Publication by Order of Court of Appeals June 18, 1981.

William F. Collins, III, McClelland, Collins, Bailey, Bailey & Manchester, Oklahoma City, for appellees.

Walter M. Powell, Dennis R. Box, Municipal Counselors, Oklahoma City, for appellant.

BOYDSTON, Judge.

This is an appeal by Oklahoma City (hereinafter referred to as City) from a district court judgment enjoining City from enforcing certain of its "A" single family zoning ordinances as they apply to property owned by Rita Jane Lynch and Helen Hill (hereinafter referred to as Lynch & Hill). The court also judicially authorized Lynch & Hill to use their property according to the "E" commercial classification with certain limitations as set forth in the Journal Entry of Judgment.

Maureen Anderson and Putnam Heights Preservation Area, Inc. (hereinafter referred to as Intervenors) filed a petition to intervene in the action which was granted.

Lynch & Hill made application to City to rezone their lot located at 3523 N. Classen Boulevard. The application asked that the "A" single family dwelling classification be rezoned to "E" local commercial. Intervenors entered the case in support of City and strenuously objected to the rezoning application. After a full hearing before the city council the application was denied. Lynch & Hill then brought suit in district court challenging the validity of the legislative zoning decision by City and sought injunctive relief to prohibit City from interfering with their use of the subject lot for uses

found within the "E" commercial zoning classification.

Lynch & Hill are sisters who inherited the subject lot from their mother. The family home was torn down after the death of the mother due to vandalism and the lot has stood vacant for several years during which time Lynch & Hill have continuously attempted to sell the property.

The property is a corner lot located adjacent to an existing strip shopping center owned by Mr. Shanbour, who offered Lynch & Hill $69,500 for the lot subject to the lot being successfully rezoned to "E" commercial.[1] Mr. Shanbour testified he intended to continue the shopping center to the corner and submitted proposed construction plans. According to the testimony, this construction would conform the entire block to the same use. Several blocks of Classen Boulevard in this area are strip zoned for various levels of commercial usage. The present single family dwelling classification is obviously a zoning relic reflecting the historic character of the street before the recent commercial intrusion. Directly north of the lot on the same side of the street, Classen Boulevard is strip zoned "D–1" and is being used for office buildings.[2] Therefore, subject lot is bounded on the north by "D–1" zoning and on the south by "E" commercial zoning. It is literally "sandwiched" between two different zoning districts. Across the street from this property is Memorial Park.

A careful review of the photographic and plat exhibits clearly show this area is not a deteriorating neighborhood, with credit apparently due to thoughtful, careful and delicately balanced zoning policies administered by City and the apparent vigilance of the local property owners. It should also be noted that the existing adjacent shopping center though zoned and used for "e" commercial is tastefully constructed and does not appear to detract any more than is reasonably necessary.

Intervenor is a property owners' association which came into existence by virtue of a city ordinance granting such special status to property owners in order to encourage preservation of quality neighborhoods. It is their position that the extension of "E" commercial zoning to the subject lot would significantly impair the value of the subdivision by creating a higher level of commercial use, increasing traffic and increasing the potential of exposure to criminal activity.

Neither Intervenor nor City at any time contested Lynch & Hill's position that they were entitled to have the subject lot rezoned from single family dwelling since that classification is an outright artifact of once valid, but now antiquated zoning as it applies to their property.[3] They urged instead that the classification be revised to "D–1", which allows for lesser commercial use than "E". It would then be less objectionable at the entrance to their subdivision. A classification of "D–1" would permit the owner to build an office building or some comparable structure which would be more in line with the building already in existence on the opposite corner of 35th Street. This would provide a more aesthetic entry into the residential area.

Lynch & Hill and their witnesses testified that, unless the lot was rezoned to "E" commercial, no profitable use for the property could be developed. Further, it would be commercially unfeasible to use the property under the "D–1" classification because of its area limitations[4] and because of the increased building costs associated with the type of structure allowed under "D–1" which would contribute to a below average yield on investment. Frank Grass, a com-

1. The shopping center and lot are located on Classen Boulevard between 34th and 35th Streets. The shopping center (zoned "E" commercial) occupies the entire block, except for subject lot.

2. "D–1" is considered "light commercial" and "E" commercial is much less restricted. There is no intermediate zoning classification between "D–1" and "E".

3. It is apparently the policy of City to deny or grant zoning applications, as submitted, without considering a lesser commercial classification.

4. 100′ × 180′.

mercial appraiser, testified that the "highest and best" use of the lot was that intended by Lynch & Hill. Intervenors countered with testimony that one block north on Classen Boulevard was an almost identical lot having the same dimensions on which a small office building under "D–1" zoning classification was operating profitably. City concurred with intervenors that it was commercially feasible to utilize the space for an office building and it could be profitably used as a "transition zone."

Both sides offered testimony as to the relative increases in traffic and other matters pertinent to potential uses. City and Intervenors offered evidence that when property is zoned "E" commercial it has a deteriorating effect on the whole neighborhood due to increases in traffic and visual and noise pollution, not to mention other predictable deleterious consequential effects.

At the close of evidence, the trial judge viewed the premises and rendered a judgment granting an injunction to prohibit City from enforcing "A" single family dwelling restrictions in relation to subject lot. He then ordered rezoning of the subject lot to "E" commercial, subject to the limitation that the following uses be prohibited:

(1) amusement place or theatre

(2) catering establishment

(3) grocery store

(4) filling station

(5) help-your-self laundry

(6) restaurant

(7) undertaking establishment

(8) laundry, dyeing or cleaning establishment

(9) drug store

(10) liquor store

(11) beer hall

(12) private club

(13) any business which includes the sale or repair or keeping for sale or stor-

ing of firearms, ammunitions or explosives or explosive devices

(14) any business which includes the sale, repair, rental, storing of materials and equipment known as narcotics paraphernalia, and/or accessories, sometimes called head shops

The court also ordered that the following restrictions be applied to the use of the subject lot:

(1) that Lynch & Hill are to erect a solid brick sightproof fence six and one-half feet in height along the west edge of the subject property

(2) that no trash receptacles may be placed where they may be seen from the adjoining property or from the public street

(3) ingress and egress shall be limited to Classen Boulevard only

(4) lighting of the subject property will be such as not to shine on any property of the intervenors

In summary, the trial court enjoined City from enforcing its "A" single family dwelling restrictions and then rezoned the lot to "E" commercial skipping several potentially applicable intermediate classifications. The trial court then limited the scope of application of the "E" commercial usage as set forth above.

■ City raises several issues in its brief, one of which is conceded by consensus. None of the parties seriously contend that the subject lot should be restricted to "A" single family dwelling. Therefore we hold that the trial court properly enjoined the application of single family dwelling zoning by City. However, there is no doubt that the trial court abused its discretion in rezoning the subject lot as it did. We believe the trial court exceeded proper judicial limits in several ways.

Standards by which the trial court's exercise of discretion must be guided in zoning matters are clearly and succinctly set forth in *Garrett v. City of Oklahoma City Okl.*, 594 P.2d 764 (1979).[5] The supreme court

**5.** The trial court's judgment was filed on August 24, 1978. The *Garrett* case was decided by the supreme court on May 8, 1979. The facts herein presented for review raise almost deja vu factual similarities. It is noted that

*Garrett* resolved an intermediate appellate court divisional conflict. See *Garrett v. City of Oklahoma City*, 590 P.2d 1195 (Okl.App.1978) and 49 OBJ 1917.

surveying and reaffirming past decisions stated:

"In actions of this kind this court must look beyond the findings and conclusions of the trial court and consider the basic physical facts appearing in the record to ascertain whether the reasonableness of the ordinance is 'fairly debatable.'

In some instances this court has affirmed the trial court's imposition of a specific zoning classification where the record reveals such classification was not 'fairly debatable' but rather the only reasonable zoning. The instant record supports the finding restriction to single family dwelling is no longer practicable. It does not support finding anything less than 'D–1' is too restrictive in nature or arbitrary or capricious.

We here hold trial court's order enjoining enforcement of single family dwelling zoning was not error. This does not necessarily mean it must be zoned 'D–1'. The only arbitrary and capricious act of City was attempting to retain residential zoning, not in denying 'D–1'. Even in face of plaintiff's testimony of the highest and best use being commercial it remains 'fairly debatable' whether property should be zoned multiple dwelling or some other category between residential or commercial.

Trial court's contrary finding is against clear weight of the evidence. When proper zoning is unclear it is City's function to rezone, not the trial court's."

Applying the rational used to establish these guidelines to the instant case, we have no alternative but the declare that the trial court's decision to rezone this lot to "E" commercial is clearly arbitrary.

We have undisputed evidence and acquiescence amounting to admission that City has arbitrarily limited the use of the property to residential use. However, it was obviously "fairly debatable" whether it should be rezoned to the status of "E" commercial. The trial court elevated the commercial use of the lot amidst a plethora of conflicting evidence as to whether "E" commercial was appropriate, totally rejecting all potential intermediate zone classifi-

cations. Implicit in its ruling, the court recognized the inherent inapplicability of the higher commercial zoning by the severe restrictions it placed upon the use of the lot.

 Under *Garrett* guidelines the trial court is authorized to rezone property over the objection of the city council only in rare instance where the new use sought is the *only reasonable zoning* applicable. In other words unless there is no credible, reasonable dispute as to the properly applicable use, the rezoning of the lot is reserved strictly to the city as a legislative function.

We therefore affirm that portion of the trial court's order enjoining the city from enforcing "A" single dwelling zoning against the subject property. We reverse and remand with directions to trial court to vacate that portion of its order rezoning the property to "E" commercial.

BACON, P. J., and BRIGHTMIRE, J., concur.